**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DANIEL CARDENAS CEVALLOS,**<br>    **Plaintiff,**<br>    v.<br>**U.S. DEPARTMENT OF STATE et al.,**<br>    **Defendants.** | **Civil Action No. 22-2602 (JDB)** |

<u>**MEMORANDUM OPINION & ORDER**</u>

Daniel Cardenas Cevallos, a Mexican national seeking to travel to the United States to carry out his agricultural business, was denied a visitor visa based on a consular officer's conclusion that he was involved in illicit drug trafficking.  He filed suit against the U.S. Department of State, Antony Blinken, in his official capacity as Secretary of State, and Rena Bitter, in her official capacity as Assistant Secretary of State for Consular Affairs (collectively, "the State Department"), claiming that consular officers violated his rights under the Immigration and Naturalization Act ("INA") and the Due Process Clause by failing to reach an independent decision on his visa or to review exculpatory material he submitted before his visa interview.  Before the Court is the State Department's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  The Court will deny the motion to dismiss for lack of subject matter jurisdiction and grant the motion to dismiss for failure to state a claim.

<u>**Background**</u>

The following facts are drawn from Cardenas Cevallos's First Amended Complaint. Cardenas Cevallos is a Mexican citizen who "has resided in Mexico his entire life and has significant personal and professional ties to the country."  First Am. Compl. for Decl. and Inj. Relief [ECF No. 7] ("Am. Compl.") ¶¶ 31–32.  As President of "Daniel Cardenas Cevallos agricultores en coopropiedad, a Mexican produce company that harvests, packs, and sells a range

of fresh produce to various U.S. customers," he has traveled regularly to the United States for meetings with clients and trade organization conferences.  Id. ¶¶ 34–36.  Cardenas Cevallos held a B-1/B-2 visitor visa from April 9, 2010, to April 8, 2020, when the visa expired.  Id. ¶ 37.

In 2020, Cardenas Cevallos applied twice to renew his visa before the growing season. Am. Compl. ¶¶ 39–41.  Both visa applications were denied.  Id. ¶ 39.  With respect to the first application, a consular officer told Cardenas Cevallos that he was inadmissible under § 212(a)(2)(C)(i) of the INA, which proscribes admission for aliens "who the consular officer . . . knows or has reason to believe . . . is or has been an illicit trafficker in any controlled substance." 8 U.S.C. § 1182(c); see Am. Compl. ¶ 39.  "In an effort to understand the reason for his visa refusal," Cardenas Cevallos contacted the U.S. Department of Homeland Security ("DHS") and offered to discuss "questions they may have about his eligibility to enter the United States."  Am. Compl. ¶ 43.  During a meeting with DHS officials on October 20, 2021, Cardenas Cevallos "answered all their questions and offered his cooperation," and "voluntarily provid[ed] information about four separate instances . . . that he believed [might] be of interest to DHS."  Id. ¶¶ 44–45.  There was no follow-up.  Id. ¶ 47.

After the meeting, Cardenas Cevallos reapplied for a B-1/B-2 visa.  Am. Compl. ¶ 48.  He scheduled an interview at the U.S. Consulate in Monterrey for June 10, 2022, in advance of which his counsel submitted to the consulate a memorandum detailing the October 2021 meeting with DHS.  Id. ¶¶ 48–49.  The consular officer asked questions about Cardenas Cevallos's personal background and business.  Id. ¶ 51.  But after ten minutes, the officer handed Cardenas Cevallos a paper stating he was inadmissible due to illicit drug trafficking, once again citing § 212(a)(2)(C) of the INA.  Id. ¶ 50.  Cardenas Cevallos gave the consular officer a copy of the memorandum his counsel had previously submitted.  Id. ¶ 52.  "The officer scanned it for approximately one minute, informed Plaintiff he could apply again in the future, and immediately ended the interview."  Id.

The consular officer had not reviewed the memorandum before the meeting, and "instead relied entirely on information available through the various State Department controlled databases" in denying the visa application. Id. ¶ 53–54.

Cardenas Cevallos filed a complaint, followed by an amended complaint, against the State Department challenging the process by which he was denied the visa. Cardenas Cevallos alleges in the amended complaint that the State Department violated his rights under the INA and the Due Process Clause. Am. Compl. ¶¶ 82–95. He claims the brief interview he received with a consular officer—who solely relied on information from State Department databases but who had not previously reviewed (and ultimately only gave a cursory glance to) the exculpatory memorandum he submitted—was unlawful. Id. ¶¶ 48–55.

Cardenas Cevallos asserts that the consular officer violated two rights allegedly guaranteed to him by the INA. First, he claims that by relying solely on the State Department information, the consular officer failed to make an independent decision on his visa application. Am. Compl. ¶¶ 58–64 (citing 8 U.S.C. §§ 1104(a)(1) and 1201(g)), 82–84 (Count One). And second, that by failing to review the memorandum he submitted, the consular officer failed to provide him requisite process. Id. ¶¶ 66–70 (citing 8 U.S.C. §§ 1201(g) and 1184(b)) (Count Two), see id. ¶¶ 85–86. He further alleges that he has a constitutional right to travel to the United States, which was denied by the officer without procedural due process. Id. ¶¶ 71–77, 87 (citing Kent v. Dulles, 357 U.S. 116 (1958), and Mathews v. Eldridge, 424 U.S. 319 (1976)) (Count Two). Finally, he asserts claims under the Mandamus Act and the Declaratory Judgment Act based on the same conduct. Id. ¶¶ 88–95 (citing 28 U.S.C. §§ 1361 and 2201(a)) (Counts Three and Four).

The State Department filed a motion to dismiss the amended complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Mot. to Dismiss [ECF No. 8] ("Mot."). Cardenas Cevallos responded, Pl.'s Resp. to Defs.' Mot. [ECF

No. 9] ("Opp'n"), and the State Department replied, Reply in Supp. of Mot. [ECF No. 10] ("Reply").  The motion is now fully briefed and ripe for resolution.

## Legal Standard

Federal courts are courts of limited subject matter jurisdiction, and thus a court must satisfy itself that it has jurisdiction as a "threshold matter."  Laureatus Group, LLC v. U.S. Dep't of Treasury, Civ. A. No. 22-2103 (RC), 2023 WL 5929412 (D.D.C. Sept. 12, 2023) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998)).  When considering a Rule 12(b)(1) motion for lack of subject matter jurisdiction, the Court "accepts the allegations of the complaint as true."  Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a complaint." Gonzalez Boisson v. Pompeo, 459 F. Supp. 3d 7, 12 (D.D.C. 2020) (quoting Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).  Here, too, the Court "accept[s] all the well-pleaded factual allegations of the complaint as true and draw[s] all reasonable inferences from those allegations in the plaintiff's favor."  Banneker Ventures, LLC, 798 F.3d at 1129.  A complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Banneker Ventures, LLC, 798 F.3d at 1129 (quoting Ashcroft, 556 U.S. at 678).  No such inference can be drawn, however, when the plaintiff faces "some insuperable bar to securing relief."  5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.) (citing Windsor v. Whitman-Walker Clinic, Inc., 279 F. App'x 9 (D.C. Cir. 2008)).  Accordingly, when the defendant offers an affirmative

defense, and the grounds for that defense appear on the face of the complaint, the action must be dismissed.  Jones v. Bock, 549 U.S. 199, 215 (2007).

**Analysis**

I.   **Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

The State Department urges the Court to dismiss this action for lack of subject matter jurisdiction.   The only apparent basis for the State Department's motion is the consular nonreviewability doctrine, which prohibits courts from reviewing most challenges to a consular officer's decision to grant or deny a visa.  Mot. at 4.  While the D.C. Circuit previously suggested that consular nonreviewability was a jurisdictional limit on a court's power to hear a case, see Saavedra Bruno v. Albright, 197 F.3d 1153, 1162 (D.C. Cir. 1999), the court has recently recognized that, due to intervening Supreme Court precedent, a dismissal on this basis is a dismissal on the merits, Baan Rao Thai Restaurant v. Pompeo, 985 F.3d at 1020, 1027–28 (D.C. Cir. 2021).  Accordingly, the Court will deny the motion to dismiss for lack of subject matter jurisdiction and consider consular nonreviewability as a basis for the Rule 12(b)(6) motion to dismiss.  See id. at 1027.

II.   **Motion to Dismiss for Failure to State a Claim**

The State Department submits that the Amended Complaint should be dismissed because Cardenas Cevallos challenges a consular officer's unreviewable decision to deny his visa. Cardenas Cevallos responds that he does not attack the consular decision itself, but rather "pre-decisional errors and misconduct."  Opp'n at 9.  Alternatively, Cardenas Cevallos claims that his challenge falls into the two recognized exceptions to the doctrine.  Id. at 13–15.  The Court will consider consular nonreviewability as an affirmative defense that would require dismissal for failure to state a claim pursuant to Rule 12(b)(6).  See Avullija v. Secretary of State, 839 F. App'x 292, 295 (11th Cir. 2020).

A "consular official's decision to issue or withhold a visa" is generally not subject to judicial review.  Baan Rao, 985 F.3d at 1024.  The D.C. Circuit has long recognized this special immunity for visa determinations, including in Saavedra Bruno, when it declined to review an Administrative Procedure Act ("APA") challenge filed by a visa applicant who, like Cardenas Cevallos, was denied entry due to the consular officer's belief that he was involved in illicit drug trafficking.  197 F.3d at 1155.  The doctrine is based in the principle that determinations relating to admission or exclusion from the United States are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." Id. at 1159 (quoting Harisiades v. Shaughnessy, 342 U.S. 580, 588–89 (1952)).  It further reflects the judiciary's recognition of the independent power of the "political branches of government" to regulate admission and exclusion from the country.

In accordance with these principles, courts have recognized that the doctrine "sweeps broadly," Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry, 168 F. Supp. 3d 268, 290 (D.D.C. 2016), applying "even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual or legal error," Chun v. Powell, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (citations omitted).  To respect the separation of powers, a court cannot allow a plaintiff to "circumvent the doctrine by claiming th[at] he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision."  Malyutin v. Rice, 677 F. Supp. 2d 43, 46 (D.D.C 2009).  In Chun, for example, the court refused to consider the plaintiff's challenge to the Secretary of State's failure to "secur[e] uniform interpretation of the provisions of the INA," as it pertained to visa adjudications.  223 F. Supp. 2d at 206.  Similarly, in Thatikonda v. DHS, Civ. A. No. 21-1564-RCL, 2022 WL 425013 (D.D.C. Feb. 11, 2022), the court declined to review the plaintiff's

challenge to DHS's allegedly "unlawful[] . . . determination of [her] inadmissibility," since it could not be "divorced from her attack on the consular officer's decision to deny her visa." 2022 WL 425013, at *5–6.

The D.C. Circuit has recognized two "narrow" exceptions to consular nonreviewability. Baan Rao, 985 F.3d at 1024. "First, an American citizen may challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights." Id. at 1024–25 (citing Trump v. Hawaii, 138 S. Ct. 2392, 2416 (2018)). Thus, in Abourezk v. Reagan, 785 F.2d 1043 (D.C. Cir. 1986), American citizens were permitted to challenge on constitutional and statutory grounds the exclusion of foreign nationals who had been invited to speak on matters of public concern. See Saavedra Bruno, 197 F.3d at 1163–64 (discussing Abourezk). Second, Congress can "expressly authoriz[e] judicial review of consular officers' actions." Baan Rao, 985 F.3d at 1025 (quoting Saavedra Bruno, 197 F.3d at 1159). The Court is not aware of any case in this circuit applying the latter exception. See Colindres v. U.S. Dep't of State, 575 F. Supp. 3d 121, 140 (D.D.C. 2021) (noting the same), aff'd, 71 F.4th 1018 (D.C. Cir. 2023).

To the extent that Cardenas Cevallos's claims attack the consular officer's decision itself, they must be dismissed unless an exception applies. See, e.g., Baan Rao, 985 F.3d at 1027; Colindres, 575 F. Supp. 3d at 140. However, if Cardenas Cevallos challenges something distinct from the merits of the decision, the complaint may survive. See Nine Iraqi Allies, 168 F. Supp. 3d at 290 (denying motion to dismiss lawsuit challenging consular officer's failure to adjudicate plaintiff's visa in a timely manner). The Court concludes that all of Cardenas Cevallos's statutory claims involve the merits of the decision because he challenges the way the consular officer reached her decision and asks the Court to remedy the harm by vacating the denial and ordering the consular officer to consider additional evidence.

The heart of Cardenas Cevallos's complaint is that the consular officer failed to give his visa application an independent or thorough review, separate rights which he claims are guaranteed by the INA.  Although Cardenas Cevallos characterizes these claims as a "lack of required pre-decisional process set forth by statute to ensure a fair decision is reached," Am. Compl. ¶ 81, neither can be separated from the decision itself.  Consider Cardenas Cevallos's challenge to the independence of the decision.  He takes issue with the information on which the consular officer relied to reach her decision.  Id. ¶ 56.  He claims that she did not sufficiently "exercise her role as a discretionary decisionmaker," instead relying on information provided by the State Department. Id.  "Plaintiff is claiming that the 'denial'—which was a consular decision—was not based on a 'meaningful' exercise of her discretion," which is a challenge to the decision itself.  Mot. at 6 (quoting Am. Compl. ¶ 54).

The second INA claim—pertaining to the thoroughness of the officer's consideration—suffers the same fate.  Cardenas Cevallos challenges the consular officer's "refus[al] to consider the evidence [he] tendered . . . , both by failing to act on pre-interview communications with counsel, and during the interview."  Am. Compl. ¶ 66.  This contention goes to the sufficiency of the evidence on which Cardenas Cevallos's visa determination was reached.  While framed as a challenge to the process he received, id. ¶¶ 66–68, the challenge goes to the basis of the decision, which is effectively a challenge to the decision itself.

The necessary relationship between this "pre-decisional" process and the decision itself is reinforced by analogy to the APA.  The APA permits parties to challenge agency action by way of the decisional process: a party may claim that the agency's decision was arbitrary, capricious, or not in accordance with law.  See 5 U.S.C. § 706(2)(A).  A court may accordingly vacate, "hold unlawful[,] and set aside" such action, and remand to the agency for a decision that considers the relevant facts and accords with the law.  Id.; see Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm

Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  Under the APA, a challenge to an agency's decision-making process is a challenge to the agency action itself.[1]  See id.  Cardenas Cevallos's claim, then, likewise cannot be separated from the agency action he challenges.

The remedy Cardenas Cevallos requests makes the actual target of his challenge plain. He asks the Court to vacate the visa denial and "instruct[] [the State Department] to promptly accept and consider all information submitted by [Cardenas Cevallos] before redetermining his eligibility for a visitor's visa."  Am. Compl., Prayer for Relief ¶ 3.  If the Court granted Cardenas Cevallos's requested relief, the Court would need to order the consular officer to review certain documents and revisit her decision.  Such an order would undoubtedly "interfere with the process of the decision which [the Court] has been precluded from reviewing."  Chun, 223 F. Supp. 2d at 207.

Cardenas Cevallos's response seems to be that he simply asks the Court to order the consular officer to do what the statute requires.  See Opp'n at 14.  But he overreads the statutory provisions he cites. With respect to the independence of the decision, Cardenas Cevallos cites a section of the INA that charges the Secretary of State with the "administration and enforcement of . . . immigration and nationality laws . . . except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas."  Am. Compl. ¶ 59 (quoting 8 U.S.C. § 1104(a)(1)).  He further points to the section under which his visa was denied, which provides that "[n]o visa . . . shall be issued to an alien if . . . the consular officer knows or has reason to believe that such alien is ineligible to recieve a visa[.]"  Id. ¶ 61 (quoting 8 U.S.C. § 1201(g)).  Neither of these provisions evince a clearly enforceable requirement that the consular officer's decision be independent of the State Department.  There would be no way for this Court

---

[1] Cardenas Cevallos cannot seek APA review of his visa determination.  See Saavedra Bruno, 197 F.3d at 1162–63.

to order the consular officer to revisit the decision without stepping inappropriately into the consular officer's shoes.

The same is true of his second statutory claim, relating to the consular officer's allegedly deficient review of his visa application. He points to a section of the INA providing that "no visa . . . shall be issued to an alien if [] it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa." 8 U.S.C. § 1201(g) (emphasis added); see Am. Compl. ¶ 70 . Further, he cites to a separate section of the INA, which describes the requirement that a consular officer shall presume an applicant for a visitor visa intends to remain the United States unless the applicant "establishes to the satisfaction of the consular officer" that the visit will be temporary. Id. (emphasis added) (quoting 8 U.S.C. § 1184(b)). The first citation does not clearly establish that the consular officer must accept any supplemental documentation, such as the DHS memorandum, or what they must do with it. The second citation adds nothing further, because it refers to a different basis for denying a visa than the one on which Cardenas Cevallos was denied. He has not identified anything the Court could order without distorting the relationship between the Court and the State Department.

Cardenas Cevallos further contends that his claim falls into a narrow class of cases subject to review because "the State Department has failed to reach the substance of the matter and render a decision." Opp'n at 14 (citing Nine Iraqi Allies, 168 F. Supp. 3d 268). In Nine Iraqi Allies, the district court afforded relief to individuals waiting for any determination on their visa to be made and ordered the State Department to make a timely decision. 168 F. Supp. 3d at 289–92. As that court noted, its decision does not extend to individuals whose visas have already been adjudicated since it is "the prerogative of the political branches to regulate the manner in which aliens may enter the United States." Id. at 290. Because Cardenas Cevallos squarely challenges the "manner" in which he was denied entry, his statutory claims are subject to consular nonreviewability.

### A.  Statutory Authorization Exception

Seeking to avoid this result, Cardenas Cevallos argues that this case falls into two exceptions to the consular nonreviewability doctrine.  First, he argues that Congress has "provided express statutory authorization for [his] suit."  Opp'n at 15; see Baan Rao, 985 F.3d at 1025 (recognizing this exception).  For support, Cardenas Cevallos turns to the INA.  He argues that the statute authorizes review when a person is deemed inadmissible because of drug trafficking, since a consular officer must have "reason to believe" they are so involved, Opp'n at 15 (quoting 8 U.S.C. § 1182(a)(2)(C)), and the State Department has required a consular officer to "assess independently any evidence relating to a finding of ineligibility," Opp'n at 15 (quoting U.S. Dep't of State, Foreign Affairs Manual,  9 FAM 302.4-3B(3) [https://perma.cc/DB2G-7FNS]).   He further argues that the provision of the U.S. Code proscribing a consular officer from issuing a visa when it "appears to the consular officer, from the statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa," 8 U.S.C. § 1201(g), "place[s] a . . . burden on consular officers to properly review evidence," Opp'n at 15.

Neither of these statutory provisions "expressly" authorizes review.  Baan Rao, 985 F.3d at 1025 (internal quotation marks omitted).  At most, the "reason to believe" provision sets a standard for consular officers to follow when adjudicating visa applications.  But the availability of a standard does not guarantee that the Court has authority to enforce it.  Cf. Alexander v. Sandoval, 532 U.S. 275, 286–87 (2001) (noting that, in determining whether a statute implies a right of action, courts must look to congressional intent since "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter").  Cardenas Cevallos appears to confuse congressional authorization of review with the presence of a "judicially manageable standard" under the APA.  See Opp'n at 15.  Under the APA, there is a strong presumption of judicial review if "judicially manageable standards" are available for a court

to apply against the agency's action.  Heckler v. Chaney, 470 U.S. 821, 830 (1985).  But here, where the decision of a consular officer is nonreviewable subject to narrow exceptions, the availability of a "judicially manageable standard" does not demonstrate Congress's intent to allow judicial review.  This conclusion is reinforced by § 104(a) of the INA, which courts have construed to "grant[] consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  Baan Rao, 985 F.3d at 1024 (quoting Saavedra Bruno, 197 F.3d at 1156); see Carter v. DHS, Civ. A. No. 21-422-RCL, 2021 WL 6062655, at *5 (D.D.C. Dec. 22, 2021) (holding that the INA does not provide an exception to consular nonreviewability); Colindres, 575 F. Supp. 3d at 139–40 (same).  This Court will not seek to control the consular officer's determination here either.

Cardenas Cevallos's claims under the Declaratory Judgment Act and the Mandamus Act fare no better.  Neither statute provides an express authorization to seek judicial review of a consular officer's actions.  See Thatikonda, 2022 WL 425013, at *6 ("[N]either . . . the Mandamus Act[] nor the Declaratory Judgment Act provide an exception to consular nonreviewability."); see also Van Ravenswaay v. Napolitano, 613 F. Supp. 2d 1, 6 (D.D.C. 2009) (holding that neither act confers a cause of action absent a "clear right to relief"); Carter, 2021 WL 6062655, at *5 (same).  Moreover, Cardenas Cevallos has not identified a "clear and indisputable duty[] owed to [him] by the federal government" as needed to obtain the extraordinary remedy of mandamus.  In re Cheney, 406 F.3d 723, 731 (D.C. Cir. 2005).  The consular officer's duty to "review probative information," Am. Compl. ¶ 90, is hardly a "ministerial" duty "so plainly prescribed as to be free from doubt and equivalent to a positive command."  Consol. Edison Co. of N.Y., Inc. v. Ashcroft, 286 F.3d 600, 605 (D.C. Cir. 2002) (quoting Wilbur v. United States, 281 U.S. 206, 218–19 (1929)).  This duty, which Cardenas acknowledges is only (at most) "implied" by the statute, Am. Compl. ¶ 90, "depends on a statute . . . the construction or application of which is not free from doubt" and thus

"involve[s] the character of judgment or discretion which cannot be controlled by mandamus." Consol. Edison, 286 F.3d at 605.  And the Declaratory Judgment Act is not a cause of action by itself but requires a "judicially remediable right."  Walpin v. Corp. for Nat. & Cmty. Serv., 718 F. Supp. 2d 18, 24 (D.D.C. 2010) (internal quotation marks omitted).  As described above, Cardenas Cevallos has failed to identify any statutory right to relief.  Lacking any statutory exception to the consular nonreviewability doctrine, all of Cardenas Cevallos's statutory claims premised on the INA must be dismissed.

### B. Constitutional Rights Exception

Cardenas Cevallos finally contends that his challenge is not barred by consular nonreviewability because his claim falls into the second exception for challenges asserting constitutional rights violations.  Opp'n at 13.[2]  This claim is not viable either.  Cardenas Cevallos has pleaded a liberty interest in "his right to travel to care for his longstanding business interests in the United States," which he asserts has been denied without procedural due process.  Am. Compl. ¶¶ 74, 78; see Opp'n at 13 (asserting his entitlement to constitutional due process based in his "critical existing ties to the United States—a place he visited regularly for years, and where he has developed extensive business and professional relationships").  He purports to source this alleged right to travel into the United States from Kent v. Dulles, which recognized that "[t]he right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment" and noted that "[t]ravel abroad, like travel within the country, may be necessary for a livelihood."  357 U.S. at 125–26 (emphasis added); see Am. Compl. ¶ 74.

---

[2] The State Department asserts that the exception applies exclusively to constitutional claims brought by American citizens.  Reply at 3–4.  The Court need not reach this argument, as Cardenas Cevallos has not pleaded any plausible entitlement to a constitutional right.

Because Cardenas Cevallos is not a citizen of the United States, <u>Kent</u> does not grant him due process rights regarding the denial of a visa to enter the United States.  <u>See</u> Mot. at 8.  "[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application."  <u>Landon v. Plascencia</u>, 459 U.S. 21, 32 (1982); <u>see</u> Mot. at 8. Cardenas Cevallos cites <u>Landon</u> for the proposition that "constitutional rights do extend to foreign nationals in some instances," Opp'n at 13, but unlike the plaintiff in <u>Landon</u>, Cardenas Cevallos is not a "continuously present resident alien" who is "entitled as a matter of due process to a hearing on the charges underlying any attempt to exclude him" after leaving the country for a short period of time.  459 U.S. at 33.  Nor has Cardenas Cevallos pleaded any facts suggesting he has "be[gun] to develop the ties that go with permanent residence."  <u>Id.</u> at 32.  To the contrary, he pleaded that he "has resided in Mexico his entire life" and travels to the United States for business.  Am. Compl. ¶¶ 31–33.  Cardenas Cevallos cites no cases supporting his position that regular business trips to the United States entitle him to due process protections when he is denied entry, and the Court is not aware of any.  On these facts, Cardenas Cevallos has not pleaded a plausible liberty interest, and the Court will not reach the question whether the procedural protections he was given were sufficient.  <u>See</u> <u>Mathews</u>, 424 U.S. at 335 (identifying "the private interest that will be affected by the official action" as the first step factor to be considered).  Cardenas Cevallos's constitutional due process claim will therefore be dismissed.

<u>Conclusion</u>

For the reasons set forth above, the State Department's motion to dismiss for lack of subject matter jurisdiction will be denied and its motion to dismiss for failure to state a claim will be granted.

\*       \*       \*

14

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [8] defendants' motion to dismiss is **GRANTED**; and it is further

**ORDERED** that this case is **DISMISSED** with prejudice.

**SO ORDERED.**

_____
/s/
JOHN D. BATES
United States District Judge

Dated: <u>September 26, 2023</u>